CARLISLE B. ROBERTS, Judge.
 

 
 *[414]
 
 The plaintiff, a family corporation, appealed from the defendant’s Order No. VL 79-216, dated May 15, 1979, concerning the imposition of certain farm use penalties for the 1977-1978 tax year (pursuant to ORS 308.399). The subject property is identified in the records of the County Assessor of Coos County as Account Nos. 1342.99, 1816.99 (the Haynes Slough Ranch), 4637.00 (the Home Ranch), 4673.00 (the Anchor Ranch) and 4925.00 (the Sumner Ranch). The penalty was imposed because the property was rezoned from an Interim Exclusive Agricultural (IAG-20) Zone to an Interim Forest and Grazing QFG-10) Zone at the owner’s request, thereby disqualifying the subject property as exclusively farm use land.
 

 Mr. Kenneth Messerle, an officer of the plaintiff corporation, testified that his family had engaged in agricultural operations in Coos County for three generations. The Haynes Slough Ranch was 60 percent bottom land and the remaining 40 percent was forested hillside. The other ranches had similar topography but different percentages: Home, 15 percent bottom land, 85 percent timber; Anchor, 50/50; Sumner, 33/67. The bottom land was all used for beef and pasture, the rest for raising timber. There have been no changes in these uses over many years except that, since 1975, a dairy on the Sumner Ranch was closed down (but the bottom land there continues in agricultural uses). From 1970 to mid-1975, the bottom lands were classified as "unzoned farm lands,” at the corporation’s request, pursuant to ORS 308.370(2). On July 1, 1975, the Coos County Board of County Commissioners approved an Interim Exclusive Agricultural (IAG-20) Zone as an "exclusive farm use” zone with the benefits provided by ORS 308.307(1). The subject property’s bottom land was within the IAG-20 zone and it became "zoned farm land.” (The forested hills were placed in IFG-40.)
 

 ORS 308.403(1) requires each district attorney to review zoning ordinances of his county to determine if a proposed farm use zone is qualified under the
 
 *[415]
 
 restrictions of ORS 308.370 et seq. and ORS 215.130 and 215.213. He can request assistance of the Department of Revenue. The record herein suggests the department was alerted by the county assessor’s office. The testimony is not clear as to steps taken but the Department of Revenue ruled that the county’s inclusion of (1) primary processing, (2) a "hardship dwelling” and (3) home-occupied businesses within the IAG-20 Exclusive Agricultural Zone did not comply with state law. After a number of meetings of the Coos County Planning Commission, the county commissioners amended the ordinance as of December 22, 1975, by deleting the provisions found contrary to the state statutes by the Department of Revenue.
 

 ORS 308.370(3) provides that the entitlement of farm land to the special assessment provisions of ORS 308.370 (including both exclusive zoned farm land and unzoned farm land) shall be determined as of January 1. Inasmuch as the amendment to Coos County’s Interim Exclusive Agricultural Zone (IAG-20) was amended on December 22, 1975, to comply with the Department of Revenue’s order, it would be applicable on the assessment date January 1, 1976, for the tax year 1976-1977. Of course, no penalty would inure to a taxpayer whose farm land was within the unzoned farm land category of ORS 308.370(2) and was transferred to ORS 308.370(1), as was the case of the plaintiff herein, because of the provision of ORS 308.395(5); in fact, under the statute cited, the taxpayer’s potential liability for additional taxes was eliminated.
 

 Apparently, during the several meetings of the planning commission to discuss the Department of Revenue’s required changes, finally made effective as of December 22, 1975, some members of the public expressed disenchantment with the exclusive farm use zoning which did not permit (a) primary processing of products grown or raised on a particular farm, (b) dwellings for employees in conjunction with farm use, (c) "home occupation” or business in a single-family dwelling, and, finally (d) "hardship dwellings.”
 
 *[416]
 
 (Another objection, raised by Mr. Messerle later, was that, in 1976, a corporate farm ownership did not obtain the benefits under the inheritance tax laws respecting exclusive farm use holdings.
 
 See
 
 Or Laws 1975, ch 762, § 5;
 
 see also
 
 Or Laws 1977, ch 666, § 11(a).)
 

 Mr. Messerle was a member of the Coos County Planning Commission from February 1973 through January 1977. GS'ccORS 215.010-215.190.) He testified that during the planning sessions involving the required amendments to IAG-20, the Planning Commission was concerned about the possibility of penalties for affected landowners. Don Trigg, an employee of the Coos County Assessor’s office for 15 years, was invited to a "planning session” in the fall of 1975, and was queried about possible penalties. Mr. Messerle testified that Mr. Trigg stated no penalty would be involved if the use of the land did not change.
 

 Mr. Woodrow Robison, a member of the Coos County Board of Commissioners, and Ms. Virginia Sipe, a member of the Planning Commission from April 1975 to December 1977, corroborated Mr. Messerle’s testimony. Both testified that their respective organizations had been concerned about the tax consequences of an amendment of IAG-20 and that Mr. Trigg told the planning group that he felt the problem confronting them was a novel situation and without precedent but that he believed there would be no penalty unless the use of the land changed.
 

 Mr. Trigg was quite right, of course, as shown by ORS 308.395(5), as to land being moved from a subsection (2) "unzoned farm land” to "exclusively zoned farm land” (which describes plaintiff’s corporation land at that time).
 

 After several public meetings, the county commissioners amended the ordinance in December 1975.
 

 In April 1976, Patrick George, the Director of the Coos County Planning Department, having "received
 
 *[417]
 
 several questions which prompted this letter,” sent an explanatory letter to unspecified landowners, including the plaintiff. A portion of it states:
 

 "Q. WHAT IS THE PENALTY FOR CHANGING THE USE OF A FARM RECEIVING THE EFU REDUCED ASSESSMENT?
 

 "A. When the zoning of property within an EFU zone is changed at the request of the owner [apparently permitted by ORS 308.397(2)] or the land ceases to be used for farm use the penalty is computed by multiplying the previous year’s tax savings by the number of years the property had been specially assessed (up to a maximum of ten (10) years).” (Emphasis supplied.)
 

 The letter closed with:
 

 "If you feel, after reading this, that your IAG-20 zoned land is zoned improperly, that a forest use designation would be more appropriate, please come into the planning department at the Coos County Courthouse, Coquille and discuss it with the staff. The county commissioners have agreed to waive the rezone fee on such requests.” (PI Ex 8.)
 

 In June 1976, after receipt of the letter, the plaintiff applied for a zone change to IFG-10 for each of its four "ranches” from the existing zoning of IAG-20 (bottom land) and IFG-40 (forested hills). (Def Ex A.)
 

 IAG-20 is the county’s exclusive farm use zone. As amended, it appears to be a bona fide zoning measure. Minimum lot size under this zoning is 20 acres. IFG-40 is designed for the development of forest and grazing areas and it mandates a minimum lot size of 40 acres. Read as a whole, it is somewhat suspect as a zoning measure if a purpose of zoning is to prevent urban sprawl. IFG-10 is designed for areas where timber and grazing are the predominant uses "but where controlled placement of compatible community uses is also desirable.” It invites tract-land development and small businesses, which are protected by the same ordinance from hog farms and livestock feedlots. (Def Ex B, 17.) The minimum lot size for this zoning is 10 acres. It is not the zoning that would be sought by serious timber owners, in the court’s opinion.
 

 
 *[418]
 
 The plaintiff’s reasons for a change, set out in the requested zone change application, were fuzzy and contradictory. For example, in Def Ex A, 2-3:
 

 "2. Why is the property in question not reasonably suited for uses permitted under the present zoning district?
 

 "The IAG-20 zone in its present form does not fit a coastal forestry and farming operation. The timberland and farmland must be managed as one unit.” [This is meaningless under the long-established and continuing Messerle operation which was properly placed within the two zones (IAG-20 and IFG-40) under which the Mes-serle property was located and had long operated.]
 

 "3. What public need would be met by the proposed zoning, that is not already met by available property in the general area?
 

 "The public’s need for food, fiber, and open spaces would be protected if this land was zoned such that the land could be managed for maximum production.” [The requested zoning under IFG-10 runs contra to this statement.]
 

 "6. Describe land uses and improvements in the general area. ([T]his relates to actual existing uses of the subject and nearby properties.)
 

 "The general area is one of forestland and forestry, farmland and farming mixed with rural residential development.” [This impresses the court with the plaintiffs rejection of IAG-20 and IFG-40 which deny rural residential development and possibly infers the plaintiff’s chief interest for the future is some degree of land development.]
 

 "12. Is the soil on the subject property rated as agricultural Class I-IV by the Soil Conservation Service or have agricultural activities taken place on the subject property in the past?
 

 "Agricultural activities have taken place on the bottom land in the past.” [The bottom land is the part which had been zoned as IAG-20; the plaintiff admits that the majority of the bottom land soils on these ranches are classified type III or higher; IAG-10 may best suit the plaintiff’s "needs of our intended use and management
 
 *[419]
 
 for this land,”
 
 (see
 
 Def Ex A, 5th sheet), but it is clearly a totally different use from IAG-20.]
 

 Among the reasons included in the "Statement of Reasons for Rezone,”
 
 (Def
 
 Ex A, sheet 9), plaintiff states: "The IAG-20 zone does not fit our situation for the following reasons: 1. Since we are incorporated, we do not qualify for reduced inheritance taxes.” This seems a curious reason, inasmuch as this legal situation was equally true when the corporation was operating its farm properties under the special farm use category of ORS 308.370(2).
 

 Pursuant to law, the plaintiff’s four applications for rezoning were referred to the Coos County Planning Commission staff. The staff found that the major land use of the subject property was and is pasturing on the bottom lands and timber production on the hillsides. It found that the land involved was already appropriately divided and zoned into the two categories of agricultural bottom land with its associated activities and timber lots, and in forest land. Therefore, a request to clarify the existing situation and to have the zoning "conform with the land use” was deemed unnecessary as the property was currently zoned with the bottom land located within the exclusive farm use, IAG-20 Zone, and the timbered wood lots were within the IFG-40 category. It noted that the zoned divisions roughly follow the 20-foot USGS contour line, making for an easy division. It was concluded that the applicant had not provided adequate information regarding preference and suitability of the IFG-10 category over the IFG-40 category.
 

 However, the Coos County Planning Commission as a whole made findings which were contrary to and overruled those of the staff and approved the plaintiff’s petitions for rezoning in August 1976.
 
 (SeePI
 
 Exs 9, 10, 11 and 12.)
 

 The court finds that there was thus effected a change of use (not necessarily the actual use at the time, but definitely as to the potential use) and a complete abdication from the requirements of the
 
 *[420]
 
 farm use statute. It is therefore not surprising to find that, under date of July 15, 1977, the county assessor notified the plaintiff that the land was removed from an exclusive farm use zone "at the owner’s request.” (PI Exs 13-17.) NccORS 308.397(2). Additional tax was found due upon declassification as provided in ORS 308.399.
 
 {See
 
 PI Exs 18-21.)
 

 The plaintiff contends that the county is estopped from assessing any penalties because two misrepresentations made by county officials were relied on by the plaintiff to his detriment; i.e., (1) the statement of Mr. Trigg at the Planning Commission meeting before IAG-20 was amended (set out above), and (2) the wording of the
 
 title
 
 of the paragraph in Mr. Patrick’s letter (PI Ex 8) as quoted,
 
 supra,
 
 at p 6, in referring only to "use” and not to "change at request of owner.”
 

 The plaintiff’s representative, Kenneth Messerle, was a member of the Planning Commission during the time of study, adoption and subsequent amendment of the ordinance establishing the IAG-20 Zone. As Mr. Trigg explained, upon request for his opinion concerning possible tax penalties, the situation was without precedent but if there was no change in use, there would be no penalty.
 

 Mr. Messerle was in a position to assess the consequences as well as was Mr. Trigg. He contended that there had been no change in actual use, but when he sought a zone change to IFG-10, he must have recognized the change in potential use, or he would not have requested it.
 

 The explanatory letter from the Planning Department was received by the plaintiff approximately two months before applications for rezoning were made by the plaintiff. (PI Ex 8.) Mr. Messerle testified that he and other corporation representatives had read the letter. While the heading is conceivably misleading with its reference to "changing the
 
 use
 
 of a farm,” the text following is clear and unambiguous. (Emphasis supplied.) (PI Ex 8.)
 

 
 *[421]
 
 Question 4 of the application for rezoning (Def Ex A) asks what changes had occurred since the present zoning was adopted. The plaintiffs answer was: "No great changes have occurred in this area recently other than continued pressure of rural residential expansion.”
 

 The plaintiff requested the removal of his land from the exclusive farm use zone to a forest land zone with a reduction in minimum lot size to 10 acres. This request caused the land to be disqualified for special assessment. (ORS 308.397(2).) ORS 308.399 imposes a penalty upon such disqualification.
 

 The issue of quasi-estoppel raised by the plaintiff is not a valid defense in this set of facts. The plaintiffs representative, Kenneth Messerle, was in such a position that his claimed reliance upon Mr. Trigg’s extemporaneous (and substantially correct) statement and the April 1976 letter from the Planning Department was not reasonable. This is the type of situation where the caveat in
 
 Johnson v. Tax Commission,
 
 248 Or 460, 463, 435 P2d 302, 304 (1967), is applicable. Therefore, the court finds that the penalty imposed by ORS 308.399 was proper and affirms the defendant’s Order No. VL 79-216.
 

 The defendant is entitled to costs.